HARRIS, JOLLIFF & MICHEL, INC., APPELLEE, *v.* MOTORISTS MUTUAL INS. CO., APPELLANT.

(No. 339—Decided January 28, 1970.)

*Mr. Joseph B. Grigsby* and *Mr. David F. Allen,* for appellee.

*Messrs. Sebastian, Fais, Durst & Marsh,* for appellant.

COLE, J. This case arises as an appeal on questions of law from a judgment of the trial court on a petition for declaratory judgment and mandatory injunction. There is little dispute as to the factual situation, and the basic issue involved is simply whether the defendant insurance company is required to defend an action brought against the plaintiff and to pay any judgment rendered in such action, or whether the situation comes within the terms of a certain exclusion contained in the policy.

The plaintiff corporation is a contractor which entered into a contract in 1966 with Divino Bros., Inc., to make certain additions and improvements to a building belonging to the latter corporation. The existing building was used for a wholesale produce business and consisted of certain office and warehouse space. To this the contractor proposed to add certain additional office and warehouse space as well as to alter some of the existing facilities. A portion of the work was to be done by Divino Bros., Inc., themselves or by other contractors hired by them, but the bulk of the construction was covered by the contract with the plaintiff. The Divino Bros., Inc., however, remained in operation during the remodeling and construction.

Plaintiff was, during the period of construction, covered by a policy of liability insurance issued by the defendant. Under the insuring agreements appeared:

"Coverage C—Property Damage.

"Liability—Except Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

There are, however, exclusions, among which appears the following:

This policy does not apply:

"* * *

"(i) under coverage C, to injury to or destruction of

(1) property owned or occupied by or rented to the insured, or (2) * * * property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control * * * ."

On November 17, 1966, a fire occurred on the premises damaging both the old building and the additions and improvements which were partially completed. Plaintiff's workmen were working in one of the new sections at the time. Ohio Farmers Insurance Company insured Divino Bros., Inc., and, having paid for the damage, took subrogation and then sued plaintiff for payment, alleging the damages were the result of negligence of its employees. In turn, plaintiff has requested defendant defend the claim and asks herein for a declaratory judgment both as to the duty to defend and the duty to pay any judgment within the policy limits of coverage. The defendant, however, says that there is no coverage, as the matter comes under the exclusion to the policy set forth above.

The court below found that there was coverage and ordered the defendant "to defend the action by Ohio Farmers Insurance Company and pay any sum which the insured shall become legally obligated to pay as a result of such action." The defendant appeals, setting forth several assignments of error, all of which are predicated, in essence, upon the contention that the cited exclusion applies. We shall deal with all assignments of error as encompassed in this basic issue: does the exclusion bar coverage under the facts herein involved?

The "care, custody or control" exclusion is a common feature of contractors' liability policies, and there has been considerable litigation as to its meaning and operation. In 62 A. L. R. 2d at page 1242 *et seq.*, appears an extended annotation dealing with these cases. It is noteworthy that there is both authority that the clause is inherently ambiguous and that it is clear and unambiguous. In Ohio the case of *Innis* v. *McDonald*, 77 Ohio Law Abs. 417, affirmed in 77 Ohio Law Abs. 424, held as applied to the facts in that case the language was ambiguous. The court was there concerned with the application of the clause to **real property, and, irrespective of its meaning when**

a piece of personal property is concerned, we agree with the court there that, as applied to the problem of real estate, there is a basic ambiguity in the clause. See also *Falls Sheet Metal Works* v. *U. S. F. & G. Co.,* 17 Ohio App. 2d 209.

It may well be true that as to a piece of machinery or equipment there is no ambiguity in the word "property." The unit would be the item of personalty which was in fact damaged. However, where real estate is concerned several meanings may be given to the term:

1. The specific area of damage: *i. e.,* a wall, a doorway, a window.

2. A subdivision of the building: *i. e.,* a room damaged, a wing damaged, a new addition, etc.

3. The entire structure which sustained injury: *i. e.,* the warehouse, the residence, the factory, etc.

Defendant, in its argument, takes the position that *two* is the proper meaning—that the new addition was in the plaintiff's care, custody or control (legal or physical) and that, therefore, the exclusion applies. However, if either of the other meanings is given a totally different result follows.

If the first meaning is given, we would have to examine the legal and physical relationship of the plaintiff to each specific area of damage, to the loading dock, to the rear wall, to the heating unit, to the common wall, etc. On the other hand, if the third meaning be given, then we must examine the legal and physical relationship of the plaintiff to the entire structure taken as a unit. Thus there is, in our opinion, a basic ambiguity in that differing meanings with differing results may be attributed to the word "property" in the clause. Is the property involved the rear wall, the added warehouse room, or the whole building?

Where an ambiguity appears in an insurance contract the Ohio law is clear. In *Munchick* v. *Fidelity & Casualty Co.,* 2 Ohio St. 2d 303, the first paragraph of the syllabus reads as follows:

"A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning

of the language used is doubtful, uncertain or ambiguous. * * * ''

In *Home Indemnity Co.,* v. *Plymouth,* 146 Ohio St. 96, the second paragraph of the syllabus is as follows:

"Where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof."

See, also, *American Financial Corp.* v. *Fireman's Fund Ins. Co.,* 15 Ohio St. 2d 171.

In the instant case we have an ambiguity within an exclusion. If the meaning of the term "property," or injured property as applied to real property in the instant case, is the entire building structure as a unit, it is clear that the plaintiff did not have the care, custody or control of the entire structure. It did not have physical control of the entire structure, and it neither owned, occupied nor rented the entire structure. To the extent necessary to its work it may have had care, custody or control of portions of the structure, but not of the entire building. Since the word "property" may be so defined in the instant case as to mean the entire building, this is not clearly excluded from the term of coverage. Since it is not clearly excluded, it is presumed to be included in the coverage.

We must also consider that this is the normal manner in which a building is considered. Fire damage is not viewed as simply damage to a particular item such as an attic or a kitchen. It is damage to the whole structure which is logically measured by the value of the entire structure before the fire and the value thereof after the fire. The additions to the property once appended become part of the original structure, not an item of personalty retaining its identity until the whole improvement is made. The building is a unit, and the addition as made becomes a part of this unit.

Where there is such an ambiguity in an exclusion, that meaning which excludes the least is necessarily the most liberal construction for the insured. To define the term property as applied to real estate to mean the entire build-

ing excludes the least and is, therefore, the interpretation conforming to the rule as set forth in the *Munchick case, supra.* Only where the insured has care, custody or control of the whole structure does the exclusion apply—and there is no application to partial situations.

In *Klapper* v. *Hanover Ins. Co.,* 39 Misc. 2d 215, 240 N. Y. S. 2d 284, a window cleaner working on a building damaged some of the windows. Under a similarly worded exclusion the court held the property was not in the care, custody and control. The court says:

"* * * Possession or control of real property is indicated by an occupation exclusive of the control of anyone else * * *.

"* * * *

"Here we have a contractor who was hired to clean windows, and nothing more. Certainly, it cannot be said that the contractor had care, custody and control over them, when they were admittedly a part of the real property. The holding of this court might well be different were the windows detached from the building and given over to the contractor for cleaning, but such was not the action before the court."

In *International Derrick & Equipment Co.* v. *Buxbaum,* 240 F. 2d 536, 62 A. L. R. 2d 1237, the contractor was installing a broadcasting company's tower and antenna which was damaged. In such a case we are dealing obviously with a single item before it had become affixed. (It was only partially raised at the time of the accident.) Hence, it was an item of personal property. This is a situation totally different from the problem presented by a piece of real property which can be, as in the *Klapper case, supra,* only partially in possession. The ambiguity arising in the case of real property does not arise where a single unit of personal property exists. The latter can be, and usually is, entirely in the control of the contractor. Real property, however, may be either partially or entirely in his control, and ambiguity in the phrase exists wherever in fact two are actually occupying and controlling a building. Does the word "property" mean the whole building? If so, in the instant case the owners, not the contractors, were in possession

and full control of the older portion of the building. The contractor was not in possession or control of the entire structure. If the word "property" refers only to a part, then where does one begin to define the part? A wall was damaged. One side was in the old portion used and controlled by the owner; the other side was part of the new structure being built. In whose control or possession was that wall? We are led to absurd results.

The word "property," as it refers to a building or structure capable of being in divided physical control, is inherently subject to these basically differing meanings.

In *A. T. Morris & Co.* v. *Lumber Mutual Cas. Ins. Co.,* 163 Misc. 715, 298 N. Y. S. 227, work was being performed on a movie theatre which was still operating as such. The employees walked on the roof and cracked it. The application of the exclusion clause was in question. The court said:

"* * * This plaintiff and its employees were only in the theatre because they had a contract to work there. They had no care and custody of the theatre property as such, nor did they have any control over it in the sense that a person who has personal property in his possession, such as an automobile, may be said to have control of it. Possession or control of real property is indicated by an occupation exclusive of the control of anyone else. * * *"

The court talks of exclusive control, but in fact the question becomes one of control of the entire structure.

We conclude an ambiguity exists. The clause in question may be interpreted in several ways, depending on the construction and meaning of the word "property." Where an ambiguity exists that meaning must be assigned which is most favorable to the insured and which excludes the least.

We conclude that the entire structure was damaged and, hence, that the "property" injured was not in the care, custody or control of the plaintiff, was not in its physical control and was not owned, occupied or rented by the plaintiff within the terms of the policy as so interpreted; and the undisputed fact that Divino Bros., Inc., was also occupying and controlling portions of the structure at the time of the fire makes the exclusion inapplicable, and the

coverage of the policy applies up to the limits therein set forth. We find none of the assignments of error well taken.

In conclusion, we agree essentially with the judgment of the trial court. However, this is a petition for a declaratory judgment as to the duties of Motorists Mutual Insurance Company under its policy, together with a prayer for mandatory injunction. The journal entry of the court below fails to include a declaration of rights, and, to remedy this omission, and rendering the judgment the court below should have rendered, we declare:

a. That under the terms of its policy herein concerned Motorists Mutual Insurance Company is obligated to defend the action brought by The Ohio Farmers Insurance Company against Harris, Jolliff and Michel, Inc., and being case No. 2050 Union County, Ohio; and

b. That under the terms of its policy Motorists Mutual Insurance Company is obligated to pay on behalf of the insured all sums which the insured, Harris, Jolliff and Michel, Inc., shall become legally obligated to pay as a result of such action, up to the maximum limit of $25,000 therein specified.

It is further ordered that Motorists Mutual Insurance Company proceed to undertake the defense of case No. 2050 Union County, Ohio, for and on behalf of Harris, Jolliff and Michel, Inc., pursuant to the terms of such policy, and, further, to pay any sums for or on behalf of such insured that the insured may become legally obligated to pay as a result of such action, up to the specified maximum limit in the policy.

As so modified, the judgment of the Court of Common Pleas is affirmed.

*Judgment modified and, as modified, affirmed.*

YOUNGER and GUERNSEY, JJ., concur.