[No. 13037-1-III.   Division Three.   July 12, 1994.]

CHRISTINE A. McGREEVY, *Individually and as Personal Representative, Respondent,* v. OREGON MUTUAL INSURANCE COMPANY, *Appellant.*

*Christopher J. Moore ( Theodore O. Creason* and *Ware, O'Connel & Creason*, of counsel), for appellant.

*Richard D. Burns* and *Burns & Henry (Darrell W. Aherin* and *Aherin & Rice*, of counsel), for respondent.

SWEENEY, A.C.J. — William J. McGreevy was killed when the vehicle he was driving struck an uninsured flatbed truck. He and his wife, Christine, were insured by Oregon Mutual Insurance Company. Their policy provided combined single limit liability coverage of $100,000. Mrs. McGreevy insisted the coverage limits for the four vehicles under the policy could be stacked, thereby increasing the policy limits to $400,000. Oregon Mutual maintained that the policy as originally issued to the McGreevys, and as amended by a later endorsement, OMG-24, limited the uninsured motorist (UIM) benefits to $100,000. The trial court concluded that the policy language limiting stacking was ambiguous and an issue of fact was presented as to whether the McGreevys had received OMG-24. Following a 2-day trial, a jury determined by special verdict that Oregon Mutual had not mailed OMG-24 to the McGreevys. An arbitration panel subsequently determined Mrs. McGreevy was entitled to $650,000 less 30 percent for the comparative fault of Mr. McGreevy. The court entered a final judgment confirming the award. Mrs. McGreevy was awarded taxable costs and attorney fees of $2,559.38. Oregon Mutual appeals the judgment; Mrs. McGreevy cross-appeals the denial of reasonable attorney fees and costs. We affirm that portion of the judgment affirming the arbitration award and reverse that portion denying the award of reasonable attorney fees and costs.

## Facts and Procedural History

In the mid-1970's, the McGreevys bought an automobile insurance policy from Oregon Mutual. From time to time, they received declaration pages and policy endorsements. Although the policy initially covered only one automobile, it was expanded to eventually cover the McGreevys' four vehicles. The policy provided $15,000 of liability insurance per vehicle.

Beginning on September 1, 1980, Washington required that all automobile insurance policies provide minimum liability limits of $25,000 per person and $50,000 per accident and that insurers offer uninsured/underinsured motorist coverage. Laws of 1980, ch. 117, §§ 1(2), 3(1). As amended, the statute required UIM coverage in the same amount as third party liability coverage, here $100,000. Laws of 1980, ch. 117, § 1(3). The Legislature in 1980 also enacted RCW 48.22.030(5) which allowed insurers to limit the stacking of coverage.[1] Laws of 1980, ch. 117, § 1(5). These changes applied to policies issued after September 1, 1980, or renewed after that date. *See* RCW 48.22.030(2).

Oregon Mutual attempted to amend the UIM coverage in its Washington policies as permitted by the new law by mailing an endorsement — OMG-24 — to all of its Washington policyholders. The endorsement stated:

> In accordance with the laws of the State of Washington it is agreed that PART III — Protection Against Uninsured Motorists, Coverage D — Uninsured Motorists is deleted and replaced with the following language:
>
> . . . .
>
> Regardless of the number of Insureds under this policy, the Company's liability is limited as follows:
>
> (a) The maximum limit of liability of all damages resulting from any one accident is the limit of liability stated in the declarations regardless of the number of covered persons,

---

[1]As added in 1980, the statute stated:

"The limit of liability under the policy coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident." Laws of 1980, ch. 117, § 1(5).

claims made or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in the accident.

On November 12, 1980, the McGreevys renewed their policy. Oregon Mutual changed the coverage to a single limit of $100,000 and increased the premium.

After Mr. McGreevy was killed on April 2, 1988, Mrs. McGreevy filed a claim with Oregon Mutual, claiming the right to stack four $100,000 limits. Oregon Mutual denied the claim. It maintained that both the original pre-1980 policy and the policy as amended by endorsement OMG-24 prohibited stacking. RCW 48.22.030(5). Mrs. McGreevy brought this declaratory judgment action claiming the 1980 insurance contract did not preclude stacking and since she had not received a copy of OMG-24, she was not bound by the language of the amended policy.

Oregon Mutual's motion for summary judgment was denied. The court concluded that the language of the pre-1980 policy was ambiguous and an issue of fact was presented as to whether the revisions set out in OMG-24 were in effect. At trial, Mrs. McGreevy denied receiving the endorsement. Her testimony, however, was contradictory as to whether she had received OMG-28, an informational sheet mailed with OMG-24.

After Mrs. McGreevy rested her case in chief, Oregon Mutual moved for dismissal pursuant to CR 41(b)(3) arguing that OMG-24 is effective because issuance of a policy rather than delivery renders coverage effective. *Webster v. State Farm Mut. Auto. Ins. Co.*, 54 Wn. App. 492, 774 P.2d 50, *review denied*, 113 Wn.2d 1018 (1989). The motion was denied. Oregon Mutual then presented evidence that OMG-24 was mailed with OMG-28 to all policyholders in Washington. Mrs. McGreevy was permitted in rebuttal, over the objection of Oregon Mutual, to testify she had not received OMG-28.

Oregon Mutual moved for a directed verdict at the close of all the evidence. The court denied the motion. By special verdict, the jury found that Oregon Mutual had not mailed OMG-24 to the McGreevys. Judgment was entered on the

verdict. Oregon Mutual's motion for judgment notwithstanding the verdict or for a new trial was denied.

Mrs. McGreevy's liability and damage claims were presented to an arbitration panel which awarded $455,000 ($650,000 less 30 percent contributory negligence). Based on agreement between the parties, the court entered judgment against Oregon Mutual confirming an arbitration award in the amount of $402,000 (policy limits plus funeral expenses) less the $102,000 already paid. It refused a later request by Mrs. McGreevy for an award of attorney fees of $145,000 and costs of $14,559.77. She was awarded costs and attorney fees in the amount of $2,559.38.

Oregon Mutual appeals. Mrs. McGreevy cross-appeals the denial of attorney fees and costs.

## DISCUSSION

### A. Coverage Under the Pre-1980 Policy

■ 1. Standard of Review. On summary judgment we engage in the same inquiry as the trial court. *Grimsrud v. State*, 63 Wn. App. 546, 548, 821 P.2d 513 (1991); *Kennedy v. Sea-Land Serv., Inc.*, 62 Wn. App. 839, 855, 816 P.2d 75 (1991). Summary judgment is only appropriate when the record demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Meaney v. Dodd*, 111 Wn.2d 174, 177-78, 759 P.2d 455 (1988). The evidence is considered in a light most favorable to the nonmoving party. *Stephens v. Seattle*, 62 Wn. App. 140, 143, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991).

2. Policy Language. Oregon Mutual first notes that as of September 1, 1980, antistacking clauses are valid if they comply with the statutory provisions of RCW 48.22.030(5). *Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 839, 734 P.2d 17 (1987). Even assuming that the McGreevys did not receive OMG-24, Oregon Mutual argues the court erred in denying the motion for summary judgment because the pre-1980 policy unambiguously prohibited stacking.

The pre-1980 policy language (without the OMG-24 endorsement) at issue is:

Regardless of the number of Insureds under this policy, the Company's liability is limited as follows:

(a) The limit of liability stated in the declarations as applicable to "each person" is the limit of the Company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and subject to the above provision respecting "each person," the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the Company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

Policy, at 5. A similar limitation, at page 10 of the Oregon Mutual policy, prohibited stacking of other automobile insurance policies.

█ Oregon Mutual relies on *Safeco Corp. v. Kuhlman*, 47 Wn. App. 662, 737 P.2d 274, *review denied*, 108 Wn.2d 1037 (1987) to support its argument that the McGreevys' pre-1980 policy is not ambiguous. In *Kuhlman*, at 664, the Safeco policy under "Part C — Uninsured Motorists Coverage" provided, in language very similar to Oregon Mutual's policy, that:

The limit of liability stated in the Declarations for "each person" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person," the limit of liability stated in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

But the policy language at issue in *Kuhlman* was different from the Oregon Mutual policy language in that it included an additional limitation. It provided under "Part F — General Provisions — paragraph 7" that "*[i]f this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto.*" (Italics ours.) *Kuhlman*, at 664-65.

In contrast, there is no limitation on UIM coverage in the Oregon Mutual policy based on the number of vehicles. Exclusionary clauses are to be strictly construed against the

insurer and are to be interpreted in accordance with the way they would be understood by the average person buying insurance. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 69, 659 P.2d 509 (1983), *modified in part on reconsideration,* 101 Wn.2d 830, 683 P.2d 186 (1984); *Mc-Mahan & Baker, Inc. v. Continental Cas. Co. (CNA),* 68 Wn. App. 573, 578, 843 P.2d 1133 (1993); *Aetna Cas. & Sur. Co. v. M&S Indus., Inc.,* 64 Wn. App. 916, 923, 827 P.2d 321 (1992) (purpose of insurance is to insure and exclusionary clauses are to be interpreted to make policy operative rather than inoperative).

Oregon Mutual limited coverage only on the basis of bodily injury suffered by "each person" in any "one accident". It did not limit coverage based on the number of covered *vehicles.* When "exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof." (Italics omitted.) *Phil Schroeder,* at 69 (quoting *Harris, Jolliff & Michel, Inc. v. Motorists Mut. Ins. Co.,* 21 Ohio App. 2d 81, 85, 255 N.E.2d 302 (1970)).

Further, RCW 48.22.030(5), as enacted in 1980, allowed insurers to limit liability under the policy "for all damages resulting from any one accident regardless of the number of covered persons, claims made, *or vehicles* or premiums shown on the policy . . .". (Italics ours.) Prior to that time, Oregon Mutual's policy language neither addressed nor precluded stacking of coverage based on the number of vehicles. Because the policy limits liability only as to *each person* based on bodily injury in *any one accident,* Mrs. McGreevy's reading of the 1980 policy is correct.

Oregon Mutual argues that whether several vehicles are insured under one policy (single policy limitation, page 5 of the policy) or each vehicle is insured under a separate policy (multiple policy limitation, page 10) the result is the same — UIM coverage is limited to a single $100,000 limit. That argument, however, does not answer Mrs. McGreevy's primary contention which is that the Oregon Mutual policy does

not preclude stacking based on the number of vehicles insured. There is only a per person limitation. Mrs. McGreevy does not argue, as Oregon Mutual suggests, that stacking on the basis of multiple vehicles is permitted because each auto is covered by a separate policy.

In sum, Oregon Mutual's 1980 policy did not limit stacking of UIM coverage based on the number of vehicles.

## B. Failure To Receive Endorsement

Oregon Mutual next contends that it is the issuance of a policy, and not delivery of that policy (or any amendment) to the insured which gives rise to the rights and obligations of the insurer and insured. Therefore, even if Mrs. McGreevy did not receive a copy of OMG-24, Oregon Mutual asserts the amendment was nonetheless effective. It argues the court erred in not granting a judgment notwithstanding the verdict.

■ 1. Standard of Review — Judgment Notwithstanding the Verdict. A motion for a judgment notwithstanding the verdict should not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict. *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980). The court must accept the truth of the nonmoving party's evidence and draw all reasonable inferences in the light most favorable to the party against whom the motion is made. *Douglas v. Freeman*, 117 Wn.2d 242, 247, 814 P.2d 1160 (1991). The court may grant the motion only when there is no competent evidence or reasonable inference that would sustain a verdict for the nonmoving party. If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury. *Douglas*, at 247.

2. Issuance Versus Delivery of the Policy. Oregon Mutual relies on *Webster v. State Farm Mut. Auto. Ins. Co.*, 54 Wn. App. 492, 774 P.2d 50, *review denied*, 113 Wn.2d 1018 (1989). There, the insureds had obtained the policies from an agent when they moved to Spokane in 1982. In 1984 they purchased a third automobile and obtained additional insur-

ance from the insurer. Each policy prohibited the stacking of underinsured motorist coverage. State Farm denied the Websters' claim. The Websters sued, arguing that they had not received their substitute policies until after the accident and the antistacking provisions were therefore ineffective. The trial court found that the policies had not been delivered and refused to give effect to the antistacking provision.

Although this court found that two of the policies in *Webster* had been delivered, we held that the result would have been the same, even if the policies had not been delivered:

> [T]he [insureds] confuse the distinction between "delivery" and "issuance". It is not the delivery but the issuance of a *policy* that renders it effective, *i.e.*, when the policy is signed and executed by officials of the insurer who are legally authorized to bind it.

(Italics ours.) *Webster*, at 496 (citing 1 Ronald A. Anderson, *Couch Cyclopedia of Insurance Law* § 10:2 (2d ed. rev. vol. 1984)); *see also Frye v. Prudential Ins. Co. of Am.*, 157 Wash. 88, 288 P. 262 (1930); *Richardson v. Brown*, 443 F.2d 926 (10th Cir. 1971) (delivery of the policy is not essential to its enforceability).

█ *Webster* is distinguishable. The dispute there was whether the *original* policy was binding upon issuance. That is not the issue here. Following the issuance of the policy here, Oregon Mutual attempted to unilaterally amend it to take advantage of changes in the law which authorized the prohibition of stacking. But this required a change in the contract of insurance which, in turn, required a meeting of the minds and agreement. Notice and agreement must be obtained before amendments or modifications to insurance policies can be made by the insurer. *Orsi v. Aetna Ins. Co.*, 41 Wn. App. 233, 240, 703 P.2d 1053 (1985) (before a policy can be modified, there must be an actual agreement or understanding that the policy will be or is modified) (relying on *Grand Lodge of Scandinavian Fraternity of Am., Dist. 7 v. United States Fid. & Guar. Co.*, 2 Wn.2d 561, 572, 98 P.2d 971 (1940) (in order to modify the bond, there must be an agreement to modify, supported by consideration)).

Oregon Mutual's position would extend the rule in *Webster* to include endorsements or amendments to an insurance contract. Such an extension, however, would eliminate the need to notify insureds of amendments and would allow an insurer to deny coverage or benefits without the knowledge or consent of the insured.

*Webster* is further distinguishable because in *Webster* the testimony regarding delivery was "based almost entirely upon Mrs. Webster's deposition testimony". On appeal, the court concluded that the facts were therefore reviewable de novo. *Webster*, at 495 (citing *In re Estate of Reilly*, 78 Wn.2d 623, 654, 479 P.2d 1, 48 A.L.R.3d 902 (1970); *Danielson v. Seattle*, 45 Wn. App. 235, 240, 724 P.2d 1115 (1986), *aff'd*, 108 Wn.2d 788, 742 P.2d 717 (1987)). The evidence here was presented not by affidavit, deposition or other written document. It consisted of the conflicting trial testimony — all of which was presented to a jury which found that Oregon Mutual had not mailed amendment OMG-24 to the McGreevys. There is ample evidence to support the jury's verdict. *Hojem v. Kelly, supra* at 145 (must be evidence which would convince an unprejudiced mind of the truth of the fact to which the evidence is directed).

■ Oregon Mutual points out that the declaration pages which the McGreevys periodically received included a reference at the bottom of the page to OMG-24. Because this reference was not present on declaration pages prior to 1980, it argues Mrs. McGreevy was provided with notice of the change in the policy terms.

We disagree that the average policyholder would be put on notice of a substantial change — the loss of stacking — by the notation at the bottom of a declaration sheet — "OMG-24". Without receipt of the actual endorsement, which the jury concluded she did not receive, the notation would not have been meaningful.

## C. Public Policy

■ Oregon Mutual contends Mrs. McGreevy's claim should be denied on public policy grounds. It complains that

it was placed in the impossible position of proving that the OMG-24 endorsement had been mailed to the McGreevys some 9 years earlier. We disagree. Oregon Mutual made a business decision not to maintain records of specific mailings of significant changes in policy coverage. It could have had each insured sign a copy of the amendment and return it to an insurance agent verifying that they received and understood the changes; the notice could have been mailed certified or registered — any of which would have provided evidence of notice. *See Robel v. Highline Pub. Schs., Dist. 401*, 65 Wn.2d 477, 484, 398 P.2d 1 (1965). A jury heard the issue and reached the decision that Oregon Mutual did not prove it had mailed the endorsement.

Oregon Mutual next argues that it is financially burdensome and therefore inequitable for it to be required to maintain records of mailing. First, there is no record of the expected cost of such a procedure. Second, increased costs would not excuse an obligation to notify an insured of significant changes in coverage. Presumably, the cost to keep such records exceeds the cost of providing for coverage it hoped to avoid when an insured is not notified of the change.

Oregon Mutual argues further that the increase in premiums should have put the McGreevys on notice that a change had been made to the existing policy. An increase in premiums is not adequate notice; premiums increase for any number of reasons, including the purchase of new vehicles, increases in coverage, or increases in the insurer's cost of business.

### D. Equitable Estoppel

Oregon Mutual next contends that the McGreevys should be estopped from denying the UIM liability limitation because they received the benefits of increased limits for uninsured motorist coverage as well as expanded coverage for underinsured motorist coverage from November 1980 until April 2, 1988, the date of the accident, without an increased premium. We disagree.

The elements of equitable estoppel are: (1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action by another in reasonable reliance upon that act, statement, or admission; and (3) injury which would result to the relying party if the first party were allowed to contradict or repudiate the prior act, statement, or admission. *Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wn.2d 726, 734, 853 P.2d 913 (1993); *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 405, 823 P.2d 499 (1992). The effect of estoppel is to preclude one party from offering an explanation or defense that he or she would otherwise be able to assert. Equitable estoppel is not favored and the party asserting it must prove each of its elements by clear, cogent and convincing evidence. *Robinson v. Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318, *cert. denied*, 506 U.S. 1028, 121 L. Ed. 2d 598, 113 S. Ct. 676 (1992); *Colonial*, at 735 (because the law does not encourage such silence, it demands the highest possible burden of persuasion).

■ Here, the first requirement of equitable estoppel has not been satisfied. There is no admission, statement or claim by Mrs. McGreevy which is inconsistent with any subsequent claim. The McGreevys were issued a policy prior to 1980 which did not preclude stacking. They paid the premiums for that policy. As determined by the jury, they were not notified of Oregon Mutual's attempt to amend the policy language; their agreement remained the same. The McGreevys did not change their position.

### E. Improper Admission of Rebuttal Testimony

Oregon Mutual next contends that the court improperly permitted Mrs. McGreevy to change her testimony on rebuttal. She testified that she had not received a copy of the endorsement but would have retained the endorsement had she received it. The court ruled that Mrs. McGreevy had met her burden of going forward with the evidence and that Oregon Mutual had the burden of proving it mailed endorsement OMG-24 to the McGreevys. Oregon Mutual presented evidence that endorsement OMG-24 was mailed together in

the same envelope with the informational notice, OMG-28, a document which Mrs. McGreevy testified she had received. Mrs. McGreevy then testified on rebuttal, over objection, that she had examined her records after testifying and that she had not received OMG-28.

Mrs. McGreevy responds that until Oregon Mutual presented its case in chief, OMG-28 was merely an information sheet describing coverage changes. She maintains that Oregon Mutual raised a new issue when it linked OMG-24 and OMG-28, under a theory that if OMG-28 was received, OMG-24 was received.

Rebuttal evidence is admissible to allow the plaintiff an opportunity to answer new material presented by the defense. *State v. White*, 74 Wn.2d 386, 394, 444 P.2d 661 (1968). Rebuttal evidence does not simply reiterate evidence in chief, but instead consists of evidence offered in reply to new matters. *State v. Coe*, 109 Wn.2d 832, 847-48, 750 P.2d 208 (1988). Frequently, true rebuttal evidence will, to some degree, overlap or coalesce with the evidence in chief. *White*, at 395. Overlapping which is slight cannot be considered error which requires a new trial. *State v. Townson*, 29 Wn. App. 430, 432-33, 628 P.2d 857 (1981). On rebuttal, the plaintiff is confined to testimony which is directed to refuting the evidence of the defendant. Edward W. Cleary, *McCormick on Evidence* 6 (2d ed. 1972). However, the question of admissibility of evidence on rebuttal rests within the discretion of the trial court. *Carle v. McChord Credit Union*, 65 Wn. App. 93, 110, 827 P.2d 1070 (1992). Error denying or allowing it is reviewed for a manifest abuse of discretion. *White*, at 395.

While it could certainly be argued that Mrs. McGreevy changed her testimony, it is also true that Oregon Mutual raised a "new" issue in its case in chief — the connection between OMG-24 and OMG-28. There was no manifest abuse of discretion. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The linking of OMG-24 to OMG-28 was appropriately the subject of rebuttal and the credibility of Mrs. McGreevy's testimony was for the jury to decide. *State v.*

*Carver*, 113 Wn.2d 591, 608, 781 P.2d 1308, 789 P.2d 306 (1989) (credibility of witnesses is exclusively within province of jury).

CROSS APPEAL

## F. Attorney Fees

Mrs. McGreevy contends the court erred in not awarding reasonable attorney fees and costs pursuant to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). We agree.

An award of attorney fees is proper when authorized by contract, statute or a recognized ground of equity. *State v. Keeney*, 112 Wn.2d 140, 142, 769 P.2d 295 (1989). In *Olympic S.S.*, the court extended this rule to provide an insured is entitled to an award of fees whenever an insured is compelled to enforce the insurer's coverage through legal action.

In *Olympic S.S.*, the insured maintained it was entitled to fees at trial because the insurer's denial of insurance coverage had necessitated a lawsuit. The court held Olympic Steamship was entitled to fees based on "Supplementary Payments ¶ D" of the insurance policy which provided:

> The Company . . . will pay, in addition to the applicable limits of liability:
>
> . . . .
>
> . . . reasonable expenses incurred by the insured at the Company's request in assisting the Company in investigation or defense of any claim or suit . . ..

(Italics omitted.) *Olympic S.S.*, at 51-52.

After specifically holding that the insured's claim for reimbursement provided a "sufficient basis for an award of attorney fees under the language of Supplementary Payments ¶ D, in Olympic's policy", the court went on to state:

> We also extend the right of an insured to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured.

*Olympic S.S.*, at 52 (citing *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 352 S.E.2d 73 (1986)). The court over-

ruled *Farmers Ins. Co. v. Rees*, 96 Wn.2d 679, 638 P.2d 580 (1982) to the extent it was inconsistent. The court stated,

> [u]pon reconsideration . . . we believe that an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue.

*Olympic S.S.*, at 53.

Because of the broad language used in *Olympic S.S.*, there is uncertainty as to whether an insured is to be awarded fees against an insurer as a matter of right whenever the insured assumes the burden of legal action to effect coverage, or, whether fees will be awarded only if the policy contains a supplemental payment provision or a reimbursement clause. The decisions underlying *Olympic S.S.* provide two different answers. *Hayseeds, Inc. v. State Farm Fire & Cas., supra; Security Mut. Cas. Co. v. Luthi*, 303 Minn. 161, 169-71, 226 N.W.2d 878, 884 (1975). In *Hayseeds*, a restaurant building burned. The insurer denied coverage because it imputed blame to the insureds who were experiencing financial troubles. The insurance policy did not contain a supplementary payment paragraph.

The court in *Hayseeds* recognized that insurance contracts are qualitatively different from other contracts because policyholders rely on insurance proceeds to immediately rebuild and third party creditors rely upon the policies for payment. *Hayseeds*, at 327. According to the court, property damage cases between policyholders and insurers are prominent instances in which the American rule for awarding attorney fees does not work. Without any discussion concerning supplemental payment clauses, the court recognized an award of fees to the insured encourages the prompt payment of valid claims. *Hayseeds*, at 329. As in *Olympic S.S.*, the policy in *Security Mut.* provided that the company shall "pay all expenses incurred by the Company for investigation . . . incurred at the Company's request." *Security Mut.*, at 165.

In *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 844 P.2d 403 (1993), despite the absence of a

supplementary payment paragraph, the court held the customers were entitled to attorney fees. It reiterated the holding of *Olympic S.S.*, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract . . .". *Estate of Jordan*, at 508.

Recently in *State Farm Mut. Auto. Ins. Co. v. Johnson*, 72 Wn. App. 580, 871 P.2d 1066 (1994),[2] Division One revisited the issue. The court there recognized that because the fee award in *Olympic S.S.* was based in part on the supplementary payment clause, subsequent courts have denied an award in the absence of a contractual fee provision. *Johnson*, at 593. The court, however, noted that this requirement has been rejected by the Supreme Court in *Estate of Jordan*. The court observed that the holding in *Olympic S.S.* was quite specific and without limitations — "[a]n award of fees is required . . . where the insurer compels the insured to assume the burden of legal action . . .". *Johnson*, at 594. The court's order denying the award of reasonable attorney fees and costs is reversed.

The judgment of the trial court confirming the arbitration award is affirmed. The order denying reasonable attorney fees and costs is reversed. The matter is remanded to the trial court for an award of reasonable attorney fees and costs.

Mrs. McGreevy is also awarded reasonable attorney fees and costs on appeal. RAP 18.1.

MUNSON and SCHULTHEIS, JJ., concur.

Review granted at 125 Wn. 2d 1014 (1995).

---

[2]A petition for review by the Supreme Court has been set for consideration on September 7, 1994.