2017 DEC 11


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DAVID JACKSON, | ) | No. 75506-4 -I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ESURANCE INSURANCE COMPANY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: December 11, 2017 |
| | ) | |

MANN, J. — This case arises out of a single car accident during a training session at Pacific Raceways, a road and drag racing facility in Kent, Washington. Appellant David Jackson asserted a claim for collision coverage under his personal auto policy with Esurance Insurance Company (Esurance). Esurance denied coverage based on an exclusion in the Esurance policy excluding collision coverage "for any vehicle located inside a racing facility for the purpose of . . . or participating in any . . . driving school, driver training, [or] skills training." Jackson sued Esurance for seeking coverage and asserting claims for breach of contract, bad faith, and violations of the Consumer Protection Act (CPA) and Insurance Fair Conduct Act (IFCA).

Jackson appeals from the trial court's decision granting summary judgment and dismissing his claims. We affirm.

FACTS

In February 2006, Jackson purchased a personal auto insurance policy with a six-month term from Esurance. Esurance is an internet-based insurance company that offers policyholders a paperless delivery system, whereby a policyholder can elect to receive his or her policies, billings, and other documents through an online system called "the online management platform." To participate in the platform, the policyholder must affirmatively consent to receive documents electronically as opposed to through U.S. Mail. The online management platform allows the policyholder to access and review all prior policy documents that have been delivered at any time during the life of the policy. A policyholder who consents to electronic delivery may request paper copies of insurance policy documents at any time. The policyholder may also withdraw consent; after doing so, the policyholder receives paper copies of the documents. Jackson consented to receive his documents electronically via Esurance's paperless delivery system when he purchased his initial policy. Jackson never withdrew his consent or requested paper copies of documents.

Because Jackson's auto policy had a six-month term, Esurance renewed Jackson's policy every six months by posting a "Renewal Offer" to the online management platform and providing an e-mail notification to Jackson that the policy was up for renewal and that he should review the terms and conditions. The e-mails included a link to the online management platform. Esurance posts the renewal offers at least 40 days before the effective date of the renewal policy. Each renewal offer contains multiple documents: a renewal offer declarations page listing all of the policy forms that are part of the renewal policy being offered, and a copy of any new policy

forms, amendments, or changes to policy terms. If there are no changes to the prior policy's form, however, Esurance does not repost the prior policy form, but instead lists the prior policy on the declarations page.[1]

Jackson's original February 2006 personal auto policy excluded losses that occurred inside a racing facility when the car is driven to compete in or practice for any race:

> [Esurance] will not pay for:
>
> . . . .
>
>> 13. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:
>>
>>> a. Competing in; or
>>> b. Practicing or preparing for any prearranged or organized racing or speed contest.

Jackson's Esurance policy renewed every six months and remained in effect from February 2006 through February 2010.

In January 2010, Esurance provided Jackson an offer for the policy renewal effective February 2010. The e-mail notification included the following statement: "By renewing your policy, you're agreeing to Esurances's current <u>Terms and Conditions</u>." The phrase <u>Terms and Conditions</u> was set out in blue and was a hyperlink to the terms and conditions of the renewal. The renewal offer included a copy of the policy declarations page, renewal offer, a notice of policy changes, and a complete copy of the new personal auto policy form. The renewal offer, and all documents, were posted to

---

[1] This is also Esurance's practice for delivering policy documents to policyholders who choose to receive physical paper copies of their insurance documents through the U.S. Mail.

No. 75506-4-I/4

Jackson's online management platform. The notice of policy changes included with the

renewal offer stated:

**IMPORTANT NOTICE**
**Explanation of Policy Changes**

**You Have Been Issued a New Automobile Policy**

Enclosed in this renewal offer is your new Esurance Automobile Policy (Form 1000 WA 11 08), which has been approved by the Washington Department of Insurance. The new policy differs in many ways from your old policy. This Explanation of Policy Changes generally describes the changes. Your new policy contains all of the changes in full detail, so please read your new policy carefully.

The notice of policy change explained that Esurance had expanded the racing

exclusion:

We added language excluding coverage for any vehicle while competing in, or practicing or preparing for, any prearranged or organized racing or speed contest.

We added an exclusion for any vehicle located inside a racing facility for the purpose of competing in, practice or preparing for any prearranged or organized racing or speed contest, or participating in any racing school, driving school, driver training, skills training, race driving experience, or racing adventure program.

The new policy included with the new offer included a broader racing exclusion that

excluded losses caused when the car was driven for any race-skills instruction program:

[Esurance] will not provide coverage for:

. . . .

12. "Loss" to any vehicle located inside a facility designed for racing or high performance driving for the purpose of:

A. Competing in;
B. Practicing or preparing for; any prearranged or organized racing or speed contest; or

-4-

C. Participating in any racing school, driving school, driver training, skills training, race driving experience, or racing adventure program.[2]

Jackson accepted this policy by paying the first installment amount due on the policy. Esurance sent Jackson a confirming e-mail thanking him for renewing his policy and telling him he could review, save, or print his policy by logging into his account. Jackson apparently never accessed the online portal and never read the policy. Jackson's Esurance policy continued to renew every six months and remained in effect from February 2010 through February 2013.

On January 6, 2013, Esurance provided Jackson another renewal offer that included a new policy. This policy included the same racing exclusion as the February 2010 policy. Esurance posted the complete policy on Jackson's online management platform. Jackson accepted this policy by paying the installment premium due. The next three renewal offers (sent July 2013, January 2014, and July 2014) did not contain a copy of the policy because Esurance did not change the policy.

In late June 2014, Jackson planned to attend an Audi driving-skills training program offered at the Pacific Raceways racecourse. Before attending the event, he logged into his Esurance online account to check to make sure that the insurance policy covered any damages that might occur during the event. According to Jackson, the only policy that he could find on the site was the pre-February 2010 policy that excluded racing but not driving-skills training.

---

2 (Emphasis added.)

On June 27, 2014, Jackson was driving his car at Pacific Raceways participating in a driving-skills event when he crashed. Jackson was instructing a passenger when he crashed. Jackson sought coverage from Esurance for the damages to his car. Esurance denied coverage explaining that his policy excluded coverage for participating in any racing school, driving school, or skill training at a facility designed for racing. Esurance's denial letter quoted the specific language from Jackson's then current policy.

On June 25, 2015, Jackson sued Esurance, claiming it violated the IFCA, breached the insurance contract, acted in bad faith, and violated the CPA. Esurance moved for partial summary judgment on coverage and then moved for summary judgment of dismissal on the remaining issues and claims. The trial court granted summary judgment in favor of Esurance. Jackson timely appealed.

## ANALYSIS

### Standard of Review

We review summary judgment orders de novo. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); ABCD Marine, 179 Wn.2d at 281. The defendant on summary judgment has the burden of showing the absence of evidence to support the plaintiff's case. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Once the moving party shows an absence of a genuine issue of material fact, the burden shifts to the nonmoving party. Young, 112 Wn.2d at 225.

While we construe the evidence and reasonable inferences in the light most favorable to the nonmoving party, if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is appropriate. Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 2548 (1986)).

*Enforceability of 2010 Amendment to the Racing Exclusion*

Jackson argues first that the trial court erred in granting summary judgment for Esurance on his claim for breach of the insurance contract because the insurance policy was unenforceable. Washington law, he argues, requires insurers to notify the policyholder of policy amendments via registered mail. Jackson does not dispute that the 2010 policy change, if enforceable, would exclude coverage for his loss. Accordingly, the only issue before us is whether the policy is enforceable.

An original insurance policy must be delivered to the insured "within a reasonable period of time after its issuance." RCW 48.18.260(1). Before amending or modifying an insurance contract, an insurer must give the policyholder notice and obtain the policyholder's agreement. McGreevy v. Oregon Mut. Ins. Co., 74 Wn. App. 858, 867, 876 P.2d 463 (1994), aff'd on other grounds, 128 Wn.2d 26, 904 P.2d 731 (1995).

Washington law does not dictate the manner in which notice of changes or amendments are to be delivered to the insured. Indeed, RCW 48.185.005 specifically allows an insurer to deliver insurance notices and documents electronically: "Delivery of a notice or document in accordance with this section is the equivalent to any delivery method required under applicable law, including delivery by first-class mail; first-class

mail, postage prepaid; certified mail; or registered mail." RCW 48.185.005(3). While RCW 48.185.005 did not become effective until July 2015, the legislature made it clear that electronic deliver prior to July 24, 2015, remained effective so long as the insured "consented to receive a notice or document in an electronic form otherwise allowed by law." RCW 48.185.005(9).

We agree with the trial court that summary judgment for Esurance was appropriate because the policy was enforceable.

First, it is undisputed that Jackson consented to receive all policy documents and notices electronically. This consent was lawful under RCW 48.185.005(9).

Second, it is undisputed that on January 15, 2010, Esurance sent Jackson an e-mail informing him that his policy would be renewing soon and that by renewing his policy he was agreeing to the "Terms and Conditions." The e-mail included a hyperlink to the terms and conditions of renewal. The e-mail stated that by renewing, Jackson was agreeing to all of the renewal offer's terms. Jackson did not open this e-mail.

Third, it is undisputed that in January 2010 Esurance posted a policy-renewal offer, including the amended policy, to Jackson's online management platform. The renewal offer included the notification of policy changes explaining the changes to the racing exclusion. The renewal offer also included the new policy that Jackson admits, does not cover his loss. Although he had an affirmative duty to read the policy, Jackson admitted that he never read it. Dombrosky v. Farmers Ins. Co., 84 Wn. App. 245, 257, 928 P.2d 1127 (1996) (insureds have an affirmative duty to read their policy and be on notice of the terms and conditions of the policy).

Fourth, it is undisputed that on January 27, 2010, Jackson accepted the renewal offer by paying the first installment amount due under the policy. No changes were made to the policy until January 2013.

Finally, it is undisputed that on January 6, 2013, Esurance delivered a renewal offer for an updated policy. The racing exclusion in the January 2013 policy was identical to the racing exclusion included in the prior policy. Jackson accepted the new policy by paying the installment premium. This policy renewed every six months, on July 6, 2013, January 6, 2014, and July 6, 2014, and was in force on June 27, 2014—the day that Jackson crashed. Because Esurance provided notice within a reasonable amount of time before amending Jackson's policy, the policy is enforceable. RCW 48.18.260(1); McGreevy, 74 Wn. App. at 867.

Jackson relies on McGreevy to argue that Washington law requires an insurer to physically deliver a policy and any amendments to the policy to the policyholder via registered or certified mail. Jackson misreads McGreevy. In McGreevy, after McGreevy was killed in an auto accident his wife sought to stack uninsured motorist (UIM) benefits under their four policies. The insurer, Oregon Mutual, claimed that nine years earlier it had mailed an endorsement to the McGreevys that prohibited stacking UIM benefits. In the subsequent litigation, a jury determined that Oregon Mutual had not mailed the endorsement. Consequently, because the endorsement was not mailed and McGreevy's wife did not receive it, the endorsement was unenforceable. McGreevy, 74 Wn. App. at 862-63.

Oregon Mutual argued on appeal that coverage should be denied because Oregon Mutual "was placed in the impossible position of proving that the [endorsement]

-9-

had been mailed to the McGreevys some 9 years earlier." McGreevy, 74 Wn. App. at 868-69. The court rejected the argument and explained that Oregon Mutual made a business decision not to maintain records of specific mailings regarding significant changes to its policy. McGreevy, 74 Wn. App. at 869. In dicta, the court noted that Oregon Mutual could have simply mailed the endorsement by certified or registered mail and thus have a record of delivering notice. McGreevy, 74 Wn. App. at 69. But the McGreevy court did not hold that an insurer is required to physical deliver endorsements by mail; the insurer must just have evidence that the notice of policy change was delivered.

Unlike in McGreevy, Esurance has undisputed evidence establishing that it timely delivered notice of the change in the racing exclusion and new policy by posting to Jackson's online policy management platform and sending e-mail notification. Jackson consented to electronic delivery of notices and documents. Consistent with RCW 48.185.005, Esurance's electronic delivery was valid and the racing exclusion is enforceable. Dismissal of Jackson's breach of contract claim on summary judgment was appropriate.

*Consumer Protection Act*

Jackson next claims that the court improperly dismissed his CPA claim on summary judgment. Again, we disagree.

Washington's CPA makes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. RCW 19.86.020. To prevail on a CPA claim, the plaintiff must prove five elements: (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce; (3) which affects the

-10-

public interest; (4) injury to the insured's business or property; and (5) a causal link between the unfair or deceptive act and the injury. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

Jackson focuses his argument on the first element—that Esurance's website and how a policyholder accesses policy documents on Esurance's online platform are deceptive. In order to establish the first element, a plaintiff must only establish that the act in question "had the capacity to deceive a substantial portion of the public." Hangman Ridge, 105 Wn.2d at 785. Jackson claims that summary judgment was not appropriate because "a jury could find Esurance's practices to be misleading and deceptive based upon the inherent difficulty [Jackson] had in locating the most basic and essential component of insurance—his insurance policy." Jackson's argument lacks merit.

The undisputed evidence establishes that Jackson's inability to locate his policy was a result of his own voluntary conduct: Jackson agreed to electronic delivery of all communications and policy documents, Esurance provided instructions at the outset of how he could access his policy documents, Esurance told Jackson from the outset how to print his policy documents and save them to his computer for later reference, and Esurance informed Jackson that he could opt out of electronic notice and have all documents sent by U.S. Mail. Instead, Jackson chose to ignore e-mails sent from Esurance and chose not to open or read renewal offers. It is undisputed that Jackson only opened one of the 111 e-mails Esurance sent to him between the time he first purchased his policy in February 2005 to the end of 2010. The sole e-mail he opened during that time frame was an e-mail dated February 27, 2006—two days after he first

purchased his policy. Jackson admits that he had only seen "a few" of the renewal offers sent to him. Had he opened and read the renewal offers and opened and read the notifications and policy documents posted to his online management platform, he would have seen the policies.

Jackson's argument further fails because his inability to find his current policy online is, in effect, no different than someone's inability to find a paper copy of their current policy if it had been mailed. Assuming that Jackson had elected to receive physical copies of his insurance documents, he still would have faced the same problem that he raises now. He would have had to open the envelope, read, file, and save the policy documents and notifications. Because Esurance does not resend the prior policy forms to policyholders each time it renews the insurance contract if there are no changes, determining the policy in effect requires the insured to sort through the previous renewal offers in order to find the policy that is currently in force. Jackson alleges that the online platform was deceptive, but it is not: using the online platform yields the same result as physical delivery does.

Jackson consented to electronic delivery, was notified about how to use the online platform, and was notified at every renewal. He had a duty to read his policies, but chose not to do so. Jackson cannot demonstrate that his decision not to review his policies and notifications at renewal establishes that Esurance's online delivery process has the capacity to deceive a substantial portion of the public. Hangman Ridge, 105 Wn.2d at 784-85. Jackson's CPA claim fails.

*Insurance Fair Conduct Act*

Finally, Jackson next contends that the trial court improperly dismissed his claim under the IFCA. We disagree.

IFCA provides a remedy for insureds when insurers unreasonably deny a coverage claim or benefit payment. RCW 48.30.015(1). If an insurer either unreasonably denies a claim or benefit payment and violates any regulation listed in RCW 48.30.015(5), then the court may award triple damages to the insured. RCW 48.30.015(2), (5). But in the absence of an unreasonable denial of coverage or benefits the IFCA does not create an independent cause of action for alleged regulatory violations. Perez-Chrisantos v. State Farm Fire & Cas. Co., 187 Wn.2d 669, 680, 389 P.3d 476 (2017).

Esurance reasonably denied coverage because the policy's racing-facility exclusion clearly excluded the loss. Because Esurance acted reasonably Jackson cannot establish an IFCA claim. Accordingly, we need not address Jackson's argument that Esurance committed a regulatory violation.

We affirm.

_____

WE CONCUR:

_____   _____