[No. 62056-3.   En Banc.   November 2, 1995.]

CHRISTINE A. McGREEVY, *Individually and as Personal Representative, Respondent*, v. OREGON MUTUAL INSURANCE COMPANY, *Petitioner*.

*Bullivant, Houser, Bailey, Pendergrass & Hoffman*, by *R. Daniel Lindahl* and *Douglas Houser*, for petitioner.

*Richard D. Burns*, for respondent.

*Sidney R. Snyder, Jr.*, on behalf of Pemco Mutual Insurance Company, Safeco Insurance Company of America, Unigard Insurance Company, and Mutual of Enumclaw Insurance Company, amici curiae.

*William R. Hickman* and *Pamela A. Okano* on behalf of State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, amici curiae.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae.

ALEXANDER, J. — We are called upon to decide but one issue in this appeal: should we overrule our decision in *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991)? We decline Oregon Mutual Insurance Company's invitation to do so, concluding, upon reexamination of our decision in that case, that the rationale underlying the decision is firmly grounded on recognized grounds of equity. We, therefore, affirm the court of appeals, and reaffirm the central holding of *Olympic Steamship*, which was succinctly stated as follows:

> "An insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees, regardless of whether the duty to defend is at issue."

*Olympic S.S.*, 117 Wn.2d at 54.

William McGreevy was killed in Garfield County in 1988 when a vehicle he was driving collided with a truck. The owner of the truck with which McGreevy collided was not insured. Consequently, Christine McGreevy, William's widow, submitted a claim to Oregon Mutual Insurance Company seeking benefits under the uninsured motorist provision of an automobile insurance policy that the McGreevys had acquired from Oregon Mutual prior to William's death. Significantly, the policy covered four vehicles that the McGreevys had acquired for family use. Oregon Mutual took the position that under the policy as

originally issued, and particularly as it was amended by a later endorsement, uninsured motorist benefits provided for each covered vehicle could not be accumulated, or "stacked," to apply to one covered event. It therefore offered to pay Christine McGreevy $100,000, a sum that represented the limits of the uninsured motorist benefit applicable to one of the four insured vehicles.

Christine McGreevy declined Oregon Mutual's offer and commenced a declaratory judgment action against the insurance company in Garfield County Superior Court, on behalf of herself and as Personal Representative of William's estate.

Oregon Mutual moved for summary judgment, asserting in its motion that the language of the policy, as originally issued to William and Christine McGreevy, precluded stacking of uninsured motorist benefits. The trial court denied Oregon Mutual's motion, concluding that the language was ambiguous in regard to stacking of benefits, and thus did not prohibit stacking. *Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 844, 734 P.2d 17 (1987) ("anti-stacking clauses are valid if they are unambiguous") *cited in Safeco Corp. v. Kuhlman*, 47 Wn. App. 662, 665, 737 P.2d 274 (1987).

The trial court's disposition of the summary judgment motion did not resolve all of the issues in the case. Questions remained as to whether an endorsement issued by Oregon Mutual in 1980 and which was intended by Oregon Mutual to preclude stacking, was effective,[1] and whether the McGreevys received notice of the endorsement. *See*

---

[1]The endorsement, which was designed to modify policies like the one in question, was developed by Oregon Mutual following the passage of a 1980 amendment to RCW 48.22.030. The amendment permitted insurance carriers to include language in their policies that precluded stacking of uninsured/ underinsured motorist coverage. The relevant section of the statute, as amended, contained the following:

"The limit of liability under the [underinsured motorist] coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident." RCW 48.22.030(5) (as amended by Laws of 1980, ch. 117, § 1, at 362).

*McGreevy v. Oregon Mut. Ins. Co.*, 74 Wn. App. 858, 867, 876 P.2d 463 (1994) ("Notice and agreement must be obtained before amendments or modifications to insurance policies can be made by the insurer.") (citing *Orsi v. Aetna Ins. Co.*, 41 Wn. App. 233, 240, 703 P.2d 1053 (1985)). A jury trial, confined solely to the notice issue, was subsequently held. At trial, Oregon Mutual offered evidence to show that in 1980 it mailed the endorsement to all of its Washington policy holders. Christine McGreevy testified at trial, and indicated that she did not receive the endorsement. The jury rendered a special verdict, finding that Oregon Mutual did not mail the endorsement to Christine and William McGreevy. The trial court then entered a "partial judgment against the defendant, Oregon Mutual Insurance Company, on and in conformity with such verdict." (Def.'s Clerk's Papers, J. on Special Verdict at 154.)

A panel of arbitrators thereafter determined that Christine McGreevy and her children suffered damages totaling $455,000.[2] Consequently, the trial court entered final judgment against Oregon Mutual and in favor of Christine McGreevy, individually and as Personal Representative of the Estate of William McGreevy, for $402,000, less the amount previously paid.[3] This amount represented the limits of the uninsured motorist benefits on all four vehicles, plus the funeral benefit. Significantly, the trial court also denied McGreevy's request for an award of reasonable attorney fees.

Both parties appealed, Oregon Mutual assigning error to the judgment against it and Christine McGreevy claim-

---

[2] The arbitration panel found that the total amount of damages to Christine McGreevy and her children was $650,000, but it attributed thirty percent of the fault to William McGreevy.

[3] After McGreevy filed her complaint against Oregon Mutual, the insurance company essentially repeated its settlement offer. Christine McGreevy accepted this offer, subject to the condition that her acceptance of the payment was without prejudice to her claim against Oregon Mutual. Oregon Mutual then paid $102,000 to Mrs. McGreevy, representing the $100,000 uninsured motorist benefit limit on one of the four insured vehicles, plus a funeral expense benefit of $2000.

ing that the trial court erred in not granting her request for attorney fees. The Court of Appeals, Division Three, affirmed the $402,000 judgment in favor of McGreevy. It, however, reversed the trial court's denial of McGreevy's request for attorney fees. In doing so, it relied on our decision in *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). We granted review on the attorney fee issue only.

## I

As we have noted above, the sole issue before us is whether we should overrule our prior decision in *Olympic Steamship*. We underscore this point because, when Oregon Mutual petitioned this court for review of the court of appeals decision, it did not assert directly that *Olympic Steamship* should be overruled. Rather, it framed the question for review as follows:

> Whether the Court of Appeals erred in holding that the insured was entitled to an award of her attorney fees and costs incurred in litigating an insurance coverage issue with Oregon Mutual *when the relevant insurance contract did not contain any contractual provision authorizing such an award of fees and costs?*

(Oregon Mutual's Pet. for Review at 2) (emphasis added).

In its petition for review, Oregon Mutual emphasized that the insurance policy in *Olympic Steamship* contained a provision that was not present in the instant case. That provision, denominated a "supplemental payment" provision, required the insurer to pay "reasonable expenses incurred by the *insured* at the Company's request in assisting the Company in investigation or defense of any claim or suit." *Olympic S.S.*, 117 Wn.2d at 52. *See also Farmers Ins. Co. v. Rees*, 96 Wn.2d 679, 682-84, 638 P.2d 580 (1982), *overruled by Olympic S.S.*, 117 Wn.2d at 53. Oregon Mutual contended that the instant case could be distinguished from *Olympic S.S.* in that the policy issued to the McGreevys did not contain a provision similar to

the supplemental payment provision we examined in *Olympic Steamship*.

Oregon Mutual has since abandoned its initial position, and so stated at argument before this court. This change of position is understandable because our decision in *Olympic Steamship* rested on more than the existence of a supplemental payment provision. In addition to the central holding in *Olympic Steamship*, which we set forth at the outset of this opinion, we said that: "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of [the] insurance contract, regardless of whether the insurer's duty to defend is at issue." *Olympic S.S.*, 117 Wn.2d at 53. We also said that "[w]e also extend the right of an insured to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured." *Olympic S.S.*, 117 Wn.2d at 52.

In two cases that followed *Olympic Steamship*, this court was again confronted with arguments that a party should be awarded reasonable attorney fees because the party had to engage in litigation to determine the extent of the risks covered by contracts of insurance. In both cases, the contracts did not contain a supplemental payments provision similar to the policy at issue in *Olympic Steamship*. Nevertheless, we recognized that attorney fees may be awarded in controversies over the coverage provided by these agreements.[4] The first of these cases was *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 844 P.2d 403 (1993), a case concerning coverage provided

---

[4]In a subsequent decision of this court, we have held that the rule articulated in *Olympic Steamship* is applicable where the insurer forces the insured to litigate questions of coverage, but that the rule does not apply in instances where the controversy is merely over the amount of, or the denial of, a claim. *See Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280-81, 876 P.2d 896 (1994).

by a fidelity bond.[5] Despite the fact that the bond did not contain a supplemental payment provision similar to that in the insurance policy in *Olympic Steamship*, we held that a party who successfully litigates in order to obtain the benefit of the bond was entitled to reasonable attorney fees. *Jordan*, 120 Wn.2d at 507-08. More directly to the point, we recently decided *Public Util. Dist. 1 v. International Ins. Co.*, 124 Wn.2d 789, 881 P.2d 1020 (1994), and said:

> Generally attorney fees are not recoverable in the absence of a contract term or statute allowing for their recovery. We have recognized in the insurance context, however, that "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees," whether or not the insurance policy contains a provision for such fees. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 54, 811 P.2d 673 (1991). *Accord Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 508, 844 P.2d 403 (1993).

*PUD 1*, 124 Wn.2d at 814-15.[6]

Significantly, in both *Jordan* and *PUD 1*, the determination as to whether to award attorney fees did not depend upon the presence of a supplemental payment provision in the relevant contract for coverage. In short, these two cases demonstrate that an award of fees in litigation over the extent of the benefit provided by an insurance contract is not contingent upon the presence of a specific provision in the contract providing for payment of expenses. It follows, therefore, that unless we overrule our decision in *Olympic Steamship*, the court of appeals decision to award attorney fees to McGreevy should be affirmed. We thus

---

[5]Although we acknowledge that there are essential differences between a fidelity bond and various insurance coverages, for the purposes of this discussion we consider a fidelity bond to fall within scope of what we refer to as contracts of insurance.

[6]The award of fees in that case was reversed for reasons unrelated to the issue here.

turn to the question of whether *Olympic Steamship* remains "good law."

## II

Notwithstanding the manner in which Oregon Mutual characterized the issue in its Petition for Review, the issue that was addressed at oral argument has been fully developed in the briefs presented by the parties and amici curiae.[7] Essentially, Oregon Mutual and the friends of court that support its position contend that *Olympic Steamship* should be overruled because (A) it is "misguided," (Br. of Pemco at 2), "clearly incorrect," (Br. of Pemco at 5; Br. of State Farm at 20), and "bad law," (Br. of State Farm at 3), because it goes against the American rule on attorney fees, and "[t]here is nothing about the insurer-insured relationship that is so unique or compelling that a different rule should apply to it," (Supplemental Br. of Pet'r Oregon Mutual at 13); (B) it is "fundamentally flawed" because it is one-sided in the sense that only the insured can be awarded fees, (Br. of Pemco at 10); (C) it inappropriately invades legislative prerogative because it is for the Legislature and not the courts to decide when attorney fees are awardable, (Supplemental Br. of Pet'r Oregon Mutual at 16; Br. of Pemco at 7; Br. of State Farm at 3-12); and (D) it runs counter to our decision in *Tank v. State Farm Fire & Casualty Co.*, 105 Wn.2d 381, 715 P.2d 1133 (1986) (Br. of State Farm at 12).

## A

■ We are satisfied that our decision in *Olympic Steamship* does not do violence to the American rule on attorney

---

[7]Two briefs by amici curiae supporting Oregon Mutual's effort to overrule *Olympic Steamship* were submitted: the first was presented on behalf of Pemco Mutual Insurance Company, Safeco Insurance Company of America, Unigard Insurance Company, and Mutual of Enumclaw Insurance Company (hereinafter Pemco). The second was presented by State Farm Mutual Automobile Insurance Company, and State Farm Fire and Casualty Company (hereinafter State Farm). The Washington State Trial Lawyers Association filed an amicus brief in which it urged us to affirm our decision in *Olympic Steamship*.

fees.[8] On the contrary, we are satisfied that it is consistent with the long-standing rule that an award of fees may be based on recognized grounds of equity. *See Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994) (holding that a court has power to award attorney fees when authorized by "contract, statute, or recognized ground of equity") (citing *State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 113-14, 111 P.2d 612 (1941)).

■ The principal premise underlying the award of attorney fees in *Olympic Steamship* was that an "insurance contract [is] substantially different from other commercial contracts." *Olympic S.S.*, 117 Wn.2d at 52 ("[I]t is important to observe that insurance contracts are qualitatively different from other contracts.") (citing *Hayseeds, Inc. v. State Farm Fire & Casualty Co.*, 352 S.E.2d 73, 77 (W. Va. 1986)). In *Olympic Steamship*, we identified two significant differences between insurance contracts and other commercial contracts. First, we noted that there is a recognized "disparity of bargaining power between an insurance company and its policyholder." *Olympic S.S.*, 117 Wn.2d at 52. In our judgment, this disparity is at its greatest when an insurance company presents a current or prospective insured with a standardized, or "form" document, in essentially a nonnegotiable, "take-it-or-leave-it" environment. Second, we observed that a motivation for an individual to obtain a contract of insurance is to "seek [ ]protection from expenses arising from litigation, not 'vexatious, time-consuming, expensive litigation with his insurer.' " *Olympic S.S.*, 117 Wn.2d at 52 (quoting *Hayseeds*, 352 S.E.2d at 79).

■ The reasons we emphasized in *Olympic Steamship* for distinguishing insurance contracts from other commercial contracts are as valid today as they were when

---

[8]The American Rule on attorney fees is that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery of such fees is permitted by contract, statute, or some recognized ground in equity. *See* Philip A. Talmadge, *The Award of Attorneys' Fees in Civil Litigation in Washington*, 16 Gonz. L. Rev. 57 (1980).

*Olympic Steamship* was decided, and are particularly applicable in the typical consumer setting. We believe also that these reasons continue to justify the equitable remedy crafted by this court in that case, a remedy that follows from the special fiduciary relationship that this court has recognized as existing between an insurer and insured. That relationship was recently discussed in *Tank v. State Farm Fire & Casualty Co.*, 105 Wn.2d 381, 715 P.2d 1133 (1986), a case that preceded *Olympic Steamship*. In that case we said that an insurance company has an enhanced duty to its insured, and that the source of that duty

> is the fiduciary relationship existing between the insurer and insured. Such a relationship exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers. This fiduciary relationship, as the basis of an insurer's duty of good faith, implies more than the "honesty and lawfulness of purpose" which comprises a standard definition of good faith. . . . Thus, an insurance company's duty of good faith rises to an even higher level than that of honesty and lawfulness of purpose toward its policyholders: an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests.

*Tank*, 105 Wn.2d at 385-86.

In *Tank*, we noted also that in the context of controversies involving insurance coverage, the enhanced fiduciary obligation springing from an insurer-insured relationship requires that "an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." *Tank*, 105 Wn.2d at 388. Thus, when an insurer unsuccessfully engages an insured in litigation to deny coverage, it can be said that the insurer not only delays the benefit of the bargain of the insurance

contract to the insured,[9] but also that the insurer acts in contravention to its enhanced fiduciary obligations. Providing a remedy for this inequitable situation is at the bottom of the rule announced in *Olympic Steamship.*

We did not suggest in *Olympic Steamship,* nor do we now, that the disproportionate bargaining position of the insurer or the frustration of the insured's contractual right to receive the benefit of its bargain is evidence of bad faith on the part of the insurer. If such were the case, the existence of bad faith alone would support the invocation of the court's equitable powers to award attorney fees, and there would be no need for the rule in *Olympic Steamship. See Miotke v. Spokane,* 101 Wn.2d 307, 338, 678 P.2d 803 (1984) (noting that bad faith conduct on the part of the losing party has also been recognized as one of a limited number of other equitable grounds for awards of attorney fees). Rather, the thrust of our decision in *Olympic Steamship* is that equity recognizes that an insurance company, because of its enhanced fiduciary obligation, owes a measure of relief to its insured when certain factors combine to frustrate an insured's justifiable expectation of insurance protection. As referenced in *Olympic Steamship,* those factors are (1) a disproportionate bargaining position of an insurer vis-a-vis the typical insurance consumer; and (2) actions of the insurer that cause an insured to suffer the costs of litigation in order to compel an insurer to honor its commitment to provide coverage. *See Olympic S.S.,* 117 Wn.2d at 52-53 (citing *Hayseeds,* 352 S.E.2d at 77).

## B

Amici Pemco criticizes the *Olympic Steamship* decision as being fundamentally unfair, suggesting that it is "one-sided" in that it authorizes an award of attorney fees exclusively to insureds, not insurers. This criticism is

---

[9]Indeed, in *Olympic Steamship,* we noted that a goal of allowing an award of attorney fees in these situations was to "encourage the prompt payment of claims." *Olympic S.S.,* 117 Wn.2d at 53 (citing *Hayseeds,* 352 S.E.2d at 79).

unwarranted because there is precedent for such "one-sided" attorney fee provisions in statutes. Indeed, Pemco acknowledges that the statutory scheme which provides for attorney fees in a consumer protection case permits fees to be awarded only to the party injured by an unfair business practice. *See Sato v. Century 21 Ocean Shores Real Estate*, 101 Wn.2d 599, 681 P.2d 242 (1984) (holding that an insurance company that must defend itself against a consumer protection action is not entitled to attorney fees). Because this one-sided attorney fee provision, provided by statute, has not been invalidated as being fundamentally unfair, we are satisfied that an award of attorney fees based on equitable principles to only one side should also be sustained. Furthermore, the one-sidedness of an award of fees available to only the insured in cases such as this specifically recognizes and attempts to balance the one-sidedness of the typical insured-insurer relationship.

## C

■ We are also convinced that the Legislature has not preempted the field of determining when attorney fees may be awarded in controversies over insurance coverage.[10] Oregon Mutual and the amici that support its position argue that the Legislature has preempted the area because it has specifically provided for attorney fees in cases where a Consumer Protection Act violation is found to have been committed by an insurance company. RCW 19.86.170. Significantly, there is nothing in the language of the Consumer Protection Act, and we know of no other authority, for the proposition that the Legislature intended to make that Act the exclusive means to recover attorney fees in a case involving a dispute over the coverage of an insurance policy. Consequently, we are satisfied that the

---

[10]The Legislature has had several opportunities to limit, modify, or invalidate the rule that was announced in 1991 when *Olympic Steamship* was filed. It has not, however, chosen to do so. Such legislative acquiescence to this court's holding in *Olympic Steamship* is thus noteworthy. *See Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 84-85, 896 P.2d 682 (1995).

Legislature intended the Consumer Protection Act to be only one avenue to obtain fees, and not the exclusive means for an aggrieved party to obtain fees in actions involving insurance coverage.

## D

Finally, Amici State Farm contends that *Olympic Steamship* "penalizes liability insurers for doing precisely what this court has directed them to do" in *Tank v. State Farm Fire & Casualty Co.*, 105 Wn.2d 381. (Br. of State Farm at 12.) Essentially, State Farm argues that when this court, in *Tank*, 105 Wn.2d at 391, "recognize[d] that insurers, when faced with defending under a reservation of rights, are not without alternatives," we absolved insurers of their duties if they chose one of those alternatives.

We believe that State Farm misunderstands *Tank*. In *Tank*, we did not tell insurers what to do. Rather, we discussed a liability insurer's "enhanced fiduciary" obligations to its insured when an insurer defends an insured under a reservation of rights, and listed various options available to the insurer in that situation. Those options included the following: (A) defend the insured and reserve the right to contest coverage; (B) sue for a declaratory judgment before undertaking the defense; or (C) require insured to pay for own defense, with guaranty to reimburse costs if final judgment establishes the insurer's liability. In the portion of the decision relied upon by State Farm, we were merely describing, not prescribing, the choices available to insurers when faced with defending under a reservation of rights. Indeed, in another section of that decision, we clearly prescribed the specific criteria that an insurer must meet in order to fulfill its enhanced fiduciary obligation to an insured, one of which is the requirement that "an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." *Tank*, 105 Wn.2d at 388. In our opinion, when an insurer unsuccessfully contests

coverage, it has placed its interests above the insured. Our decision in *Olympic Steamship* remedies this inequity by requiring that the insured be made whole.

### III

In sum, we reaffirm our holding in *Olympic Steamship*, and thus affirm the court of appeals. Because McGreevy requested attorney fees on appeal and is the prevailing party on appeal, we award to her additional reasonable attorney fees for appeal to this court.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE, and PEKELIS, JJ., concur.