

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MICHAEL KEITH and LOIS ANNE
KEITH, husband and wife,

        Plaintiffs,

        v.

PRESTIGE CUSTOM BUILDERS, INC.,

        Defendant.

—————————————————

PRESTIGE CUSTOM BUILDERS, INC.,

        Respondent,

        v.

CHET'S ROOFING AND
CONSTRUCTION, INC.,

        Third Party Defendant,
        and
HUARD SEPTIC DESIGN
MONITORING, LLC,

        Appellant,
        and
MIRSKY ELECTRIC, INC.; STUCCO
WORKS, LLC; and CHESTER
CHMIELINSKI and HELEN
CHMIELINSKI, individually and on
behalf of the marital community
comprised thereof, doing business as
CHET'S ROOFING AND
CONSTRUCTION,

        Third Party Defendants.

No. 70656-0-I

DIVISION ONE

UNPUBLISHED

FILED: December 29, 2014

COX, J. — At issue is whether Huard Septic Design and Monitoring LLC is entitled to an award of reasonable attorney fees based on a contract with Prestige Custom Builders Inc. Because there is no contract between them that supports such an award, we affirm the trial court's denial of reasonable attorney fees.

In April 2006, Prestige and Huard entered into a Master Subcontractor Agreement ("Master Agreement"), as "Contractor" and "Subcontractor," respectively.[1] Huard signed this contract on April 12, 2006, and Prestige signed it on April 17, 2006. Thus, the "date hereof" under this contract is April 17, 2006.

This five-page contract, drafted by Prestige, provided for the terms and conditions that would apply to Huard "furnishing any materials and/or performing any work on" construction projects that Prestige would undertake in the future. It further provided that an individual construction project would be described in "a separate addendum agreement called a Project Subcontract." And it specified what constituted a "Project Subcontract."

Another document in the record before us is dated April 10, 2006.[2] It is comprised of a letter from Huard to Prestige, together with a preprinted form containing terms and conditions drafted by Huard. It has three pages. Lois Anne Keith, one of the owners of the real property on which it appears Huard performed work, signed the document as "Owner" on April 26, 2006. There are no other signatures that appear near the signature of "Owner."

---

[1] Clerk's Papers at 34-38.

[2] Id. at 40-42.

2

In 2012, Michael and Lois Anne Keith commenced this action, suing their general contractor, Prestige, alleging substandard work and numerous defects in the construction of their home. Subsequently, Prestige impleaded four subcontractors, including Huard, claiming they were liable for the alleged defects.

Huard did not move to compel arbitration, notwithstanding that Article XVI of the Master Agreement provides for arbitration of disputes. Rather, it moved for summary judgment, pursuant to CR 56. The trial court granted this motion and dismissed with prejudice Prestige's claims against Huard.

Huard then moved for an award of attorney fees incurred in defending against Prestige's claims. The trial court denied this motion.

Huard appeals.

## CONTROLLING CONTRACT TERMS

Huard first argues that it is entitled to attorney fees based on an attorney fee provision in what it characterizes as the "Project Subcontract." In response, Prestige contends that this provision in the Project Subcontract does not apply. Thus, a threshold issue is whether the terms of the Master Agreement control over the terms in the Project Subcontract. We hold that the terms and conditions of the Master Agreement control, not those of any other document in this record.

"The 'touchstone of contract interpretation is the parties' intent.'"[3] "Washington courts follow the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words

---

[3] Realm, Inc. v. City of Olympia, 168 Wn. App. 1, 4-5, 277 P.3d 679 (quoting Durand v. HIMC Corp., 151 Wn. App. 818, 829, 214 P.3d 189 (2009)), review denied, 175 Wn.2d 1015 (2012).

used."[4] "An interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless or ineffective."[5]

This court may affirm a trial court's decision on any basis supported by the record.[6]

Article I of the Master Agreement provides as follows:

**I. MASTER SUBCONTRACTOR AGREEMENT**
The parties hereto agree that from the date hereof until this Master Agreement is terminated that Prestige Custom Builders, Inc., the "Contractor", may contract with Huard Septic Design & Monitoring, the "Subcontractor", for the furnishings of materials and/or the performance of various work on projects being constructed by the Contractor. *The parties further agree that this Master Agreement shall control their respective rights and privileges, which arise out of the Subcontractor furnishing any materials and/or performing any work on the Contractor's construction projects.*

*It is the intent of the parties that these terms and conditions apply to any provision of services by the Subcontractor regardless of whether these terms and conditions are referenced in any purchase order, subsequent contract memo, etc. during the term of this contract.*

Entering into this Master Agreement shall not obligate either the Contractor or the Subcontractor to agree to any subsequent request for services or to any volume of business during the term of this Master Agreement. *The intent is that if any services are procured and agreed by both parties during the term of this Agreement, the terms and conditions of this Master Agreement shall apply.* If any terms and conditions on any preprinted written form from the Contractor conflicts with this Master Agreement, the

---

[4] Id. at 5.

[5] Seattle-First Nat'l Bank v. Westlake Park Assocs., 42 Wn. App. 269, 274, 711 P.2d 361 (1985).

[6] LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

terms of this Master Agreement apply and supercede any other terms to [the] contrary.

Each individual project conducted with the Subcontractor will be described in a separate addendum agreement called a *Project Subcontract. Your signed proposal or quote*, including specific details on Project Scope of Work, Price, Schedule, and Payment Terms and exclusions, constitutes a Project Subcontract.[7]

The emphasized language in the first three paragraphs of the above excerpt shows that the parties intended for the Master Agreement to control the parties' "rights and privileges" that "arise[s] out of [Huard] furnishing any materials and/or performing any work on" Prestige's construction projects. Moreover, the terms and conditions of the Master Agreement apply to the projects "regardless of whether these terms and conditions are referenced" in subsequent documents. This provision is explicit that "*if any services are procured* and agreed by both parties during the term of this Agreement, *the terms and conditions of this Master Agreement shall apply*."[8]

The objective manifestation of intent of this provision is clear—the terms and conditions of the Master Agreement control for any projects for which Huard provided materials and/or work, and there are no exceptions. Further, this is true even "[i]f any terms and conditions on any preprinted form from [Prestige] conflicts with this Master Agreement . . . ."[9]

In short, the terms and conditions of the Master Agreement control, and the terms and conditions of subsequent agreements between these parties do

---

[7] Clerk's Papers at 34 (emphasis added).

[8] Id. (emphasis added).

[9] Id.

5

not. Thus, to the extent that Huard relies on provisions of what it claims is the "Project Subcontract" defined in the Master Agreement, those provisions are not applicable.

Notwithstanding the clear wording of the Master Agreement that we just discussed, Huard argues that the terms and conditions of what it characterizes as the "Project Subcontract" apply regarding the award of attorney fees. Specifically, it contends that the paragraph titled "DISPUTES" in the preprinted portion of the April 10, 2006 document that it drafted and sent to Prestige is applicable. Huard is mistaken.

First, we doubt that the April 10, 2006 document constitutes a "Project Subcontract," as defined in the Master Agreement. The Master Agreement specifies that such a subcontract is:

> ***Your signed proposal or quote***, including specific details on Project Scope of Work, Price, Schedule, and Payment Terms and exclusions . . . .[10]

The April 10, 2006 document that contains what appears to be Huard's bid specifying details regarding work to be done at the Keiths' home is not signed by Huard. Thus, it does not qualify as a Project Subcontract under the plain terms of the Master Agreement between Prestige and Huard.

We also note that the April 10, 2006 document that Huard drafted appears to primarily define the terms and conditions between "Owner" and Huard over the work to be done on the Keiths' property. For example, the word "Owner" appears

---

[10] Id. (emphasis added).

throughout the preprinted terms.[11] But neither the word "Contractor" nor "Prestige" appears in the DISPUTES paragraph on which Huard primarily rests one of its arguments for fees.[12] And there is a signature block for "Owner" at the end of the preprinted portion of the document, but no signature block for Prestige or "Contractor."[13]

At oral argument, Huard noted that the signature of someone named Terry appears on the face page of this document. But that does not change our view of the document's effect. This signature appears to be next to initials showing the correction of the design fee from $2,000 to $1,850.[14] That does not convince us that Terry, assuming he was the agent for Prestige, agreed to the terms and conditions of the Disputes paragraph that appears much later in the document on which Huard rests its argument.

Even if Huard could persuasively argue why we should ignore its inability to overcome these threshold obstacles, Huard's arguments based on this document are wholly unpersuasive.

Huard asserts that the Master Agreement incorporates what it characterizes as the Project Subcontract. But there are no terms or conditions in the Master Agreement, in our view, that support Huard's argument that these terms and conditions of the April 10, 2006 document are incorporated into the

---

[11] See id. at 41-42.

[12] Id. at 41.

[13] Id. at 42.

[14] Id. at 40.

7

Master Agreement. Thus, Huard's arguments based on incorporation are unpersuasive. Further, the terms of the Master Agreement characterize a project subcontract as an addendum agreement to the Master Agreement. This does not advance Huard's argument. Even if the April 10, 2006 document is an addendum to the Master Agreement, the plain language of the Master Agreement states that the controlling terms are those contained in the Master Agreement. The terms in the April 10, 2006 document simply do not control.

Huard argues that Article I of the Master Agreement does not address the relationship between the Master Agreement and other documents. Huard contends that Article I only controls conflicts between terms in the Master Agreement and terms in Prestige's own preprinted forms. Huard is incorrect.

Huard relies solely on the following emphasized language from Article I:

> Entering into this Master Agreement shall not obligate either the Contractor or the Subcontractor to agree to any subsequent request for services or to any volume of business during the term of this Master Agreement. The intent is that if any services are procured and agreed by both parties during the term of this Agreement, the terms and conditions of this Master Agreement shall apply. *If any terms and conditions on any preprinted written form from [Prestige] conflicts with this Master Agreement, the terms of this Master Agreement apply and supercede any other terms to [the] contrary.*[15]

While Huard is correct that this emphasized language addresses conflicts between the Master Agreement and terms on any preprinted written form from Prestige, Huard's reading of Article I is too narrow. Looking to Article I as a whole, it is clear that it addresses the relationship between the Master Agreement and other documents. Specifically, the parties intended for the terms

---

[15] Id. at 34 (emphasis added).

of the Master Agreement to control, regardless of the existence of terms in other documents. This is especially apparent from the sentence that immediately precedes the one emphasized by Huard. That sentence states, "The intent is that if any services are procured and agreed by both parties during the term of this Agreement, *the terms and conditions of this Master Agreement shall apply*."[16] This sentence is broad and contains no limitations or conditions on when the terms of the Master Agreement apply. The sentence identified by Huard merely provides a clarifying point—that the terms of the Master Agreement apply even if the terms and conditions on a preprinted written form from Prestige conflicts with the terms of the Master Agreement. Huard's argument is not persuasive.

Next, Huard argues that there is no conflict between the Master Agreement and what it characterizes as the Project Subcontract. In response, Prestige argues that the trial court properly found that provisions in these contracts conflict and that the Master Agreement controls. But, neither party explains why the issue of whether the provisions conflict is material. As just discussed, Article I indicates that the terms of the Master Agreement apply without limitation or condition. Huard does not identify any conditional language in the Master Agreement that requires there to be a conflict in order for the terms of the Master Agreement to control. Thus, this argument does not change our conclusion.

---

[16] Id. (emphasis added).

## AWARD OF ATTORNEY FEES AT TRIAL

We next consider whether reasonable attorney fees are awardable under any of the terms and conditions of the Master Agreement. We conclude, as the trial court concluded, that this agreement does not support such an award.

"Washington follows the American rule 'that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery of such fees is permitted by contract, statute, or some recognized ground in equity.'"[17] "In general, a prevailing party is one who receives an affirmative judgment in his or her favor."[18]

"Whether a contract or statute authorizes an award of attorney fees is a question of law reviewed de novo."[19]

*Disputes & Arbitration Provision*

Huard argues that it is entitled to attorney fees under Article XVI of the Master Agreement, the "Disputes & Arbitration" provision. The trial court rejected this argument. So do we.

In its order denying fees, the trial court concluded that Huard took no action to compel arbitration. It also concluded that the Master Agreement

---

[17] Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130, 143, 26 P.3d 910 (2001) (quoting McGreevy v. Or. Mut. Ins. Co., 128 Wn.2d 26, 35 n.8, 904 P.2d 731 (1995)).

[18] Riss v. Angel, 131 Wn.2d 612, 633, 934 P.2d 669 (1997).

[19] McGuire v. Bates, 169 Wn.2d 185, 189, 234 P.3d 205 (2010).

"unambiguously allowed attorney's fees only for the prevailing party in an arbitration proceeding."[20] Accordingly, it denied Huard's motion.

A plain reading of the Disputes & Arbitration provision supports the trial court's conclusion. This provision states:

> **XVI. Disputes & Arbitration**
> If any dispute arises between the parties, the parties will make a good faith effort to first resolve without resort to litigation. If a dispute cannot be resolved between the parties, then either party may file suit in a court of competent jurisdiction. If suit is filed, the dispute will be decided according to the Mandatory Arbitration Rules regardless of the amount in dispute. Each party expressly waives the dollar limits currently in effect and the arbitrator may issue an award in any dollar amount. The arbitrator shall have the authority to determine the amount, validity and enforceability of a lien. The parties agree to accept the arbitrator's award as final and binding. The parties each waive their right to file any appeal for trial de novo in Superior Court. ***In any such arbitration proceeding, the prevailing party shall in all cases be awarded his or her reasonable attorney's fees regardless of whether the dispute is resolved through settlement or arbitration.***[21]

This emphasized language expressly indicates that attorney fees are available for the prevailing party in an arbitration proceeding. Nothing in this provision indicates that attorney fees are available for the prevailing party in any other type of proceeding. As the trial court properly concluded, the Master Agreement is silent as to whether a party who prevails at trial is entitled to an award of attorney fees. Accordingly, because this case did not involve an arbitration proceeding, this provision does not provide a basis for a fee award to Huard.

---

[20] Clerk's Papers at 199.

[21] Id. at 37 (emphasis added).

Huard makes several arguments that it is entitled to fees under this provision. None are persuasive.

First, Huard argues that an "arbitration proceeding" is "contractually defined as including a suit filed in a court of competent jurisdiction and determined according to the Mandatory Rules of Arbitration."[22] Thus, it argues that because Prestige's claim "was properly decided by a superior court judge according to Rule 1.3 of the Mandatory Arbitration Rules," Huard was entitled to an award of fees under this provision.[23] This argument is unconvincing.

This provision does not contractually define "arbitration proceeding" in the manner suggested by Huard. And when this provision is reasonably read as a whole, it is clear that the parties intended for an "arbitration proceeding" to involve an arbitrator. Notably, the provision consistently refers to the "arbitrator" when it discusses the parties' contractual modifications of the Mandatory Arbitration Rules. Nothing about this provision suggests that an "arbitration proceeding" is defined merely as filing suit in a court of competent jurisdiction that includes mandatory arbitration proceedings as an option to resolve disputes.

Moreover, it is without serious dispute that this case was never "decided according to the Mandatory Arbitration Rules." Huard failed to move to compel arbitration. Rather, it moved for summary judgment pursuant to CR 56. This case, as this record amply demonstrates, was decided under Rule 56 of the Civil Rules for Superior Court, not the Mandatory Arbitration Rules.

---

[22] Brief of Appellant at 28.

[23] Id. at 30.

Huard relies on MAR 1.3 to support its argument. That rule provides that a case filed in the superior court remains under the jurisdiction of the superior court in all stages of the proceeding, including arbitration.[24] It also states that until a case is assigned to an arbitrator, the rules of civil procedure apply, and after a case is assigned to the arbitrator, the MAR apply, except where stated otherwise.[25] But the jurisdiction of the superior court is irrelevant to the question before us. And this rule does not establish that this case was decided according to the Superior Court Mandatory Arbitration Rules. Arguments to the contrary are simply unpersuasive.

Second, Huard points out that the provision recognizes a right to fees when "the dispute is resolved through either 'settlement *or* arbitration.'"[26] Huard argues, "If a party can be entitled to fees if it prevails through settlement, then obviously prevailing through arbitration is *not* the only vehicle."[27] This argument fails to overcome the obvious difficulty. There was no arbitration, and one must at least be commenced before fees are potentially awardable.

Third, Huard argues that the phrase "in all cases" in the last sentence of this provision supports the conclusion that it is entitled to fees.[28] That sentence states, "In any such arbitration proceeding, the prevailing party *shall in all cases*

---

[24] MAR 1.3(a).

[25] MAR 1.3(b)(1).

[26] Reply Brief of Appellant at 22 (quoting Clerk's Papers at 37).

[27] Id.

[28] Brief of Appellant at 32.

be awarded his or her reasonable attorney's fees regardless of whether the dispute is resolved through settlement or arbitration."[29] Huard latches on to this emphasized language to argue that fees are awardable in any "case" arising out of a dispute about the contract. But this argument completely ignores the opening clause of this sentence, "*In any such arbitration proceeding* . . . ."[30] Such a reading would render the opening clause meaningless, and thus, we reject this argument.

Fourth, Huard argues that Prestige's construction of this provision "leads to absurd consequences."[31] It contends that if Prestige "can always take a shot at winning" because if Prestige prevails, it would be entitled to fees under the indemnification provision, but if its claim is so weak that it does not survive summary judgment, then the subcontractor will never be entitled to fees.[32] But, as the trial court concluded, Huard could have moved to compel arbitration. It chose not to do so. And as Prestige notes, refraining from arbitration can be a rational choice, as it provides certain advantages. Thus, it is not the construction of this provision that leads to these consequences, but rather, it is a party's strategic decision that can lead to such consequences.

Finally, Huard argues that, at the very least, this provision is ambiguous and, consequently, it must be interpreted in Huard's favor since it was drafted by

---

[29] Clerk's Papers at 37 (emphasis added).

[30] Id. (emphasis added).

[31] Brief of Appellant at 32.

[32] Id. at 33.

Prestige. But, as already discussed, the language of this provision is plain and unambiguous. Thus, this argument is also unpersuasive.

*Indemnification Provision*

Huard argues that it is entitled to fees under Article XIX of the Master Agreement, the "Indemnification" provision. Specifically, Huard argues that under RCW 4.84.330, this provision is bilateral. Because Huard failed to properly preserve this argument below, we decline to consider it.

Under RAP 2.5(a), the appellate court may refuse to review any claim of error that was not raised in the trial court. Generally, it does not review "an issue, theory, argument, or claim of error not presented at the trial court level."[33]

In its motion for award of attorney fees, Huard cited generally to the Master Agreement and the Project Subcontract.[34] But the only specific provision that Huard cited within these agreements was Article XVI of the Master Agreement, the Disputes & Arbitration provision. Huard did not cite Article XIX, the Indemnification provision. Specifically, Huard argued in its motion:

> Prestige's Master [Agreement] states that the prevailing party to any dispute shall be awarded its attorneys' fees. *See* Ex. 1 to *Huard Decl. at sec. XVI* ["Disputes & Arbitration" provision]. The Master [Agreement] explicitly incorporates the terms of the Project Subcontract. *Id.* at sec. I. Similarly, the Project Subcontract states that the prevailing party to any dispute shall be awarded its attorneys' fees and costs. Ex. 2 to *Huard Decl.* Under RCW 4.84.330, such contractual attorneys' fee clauses are enforceable.[35]

---

[33] Lindblad v. Boeing Co., 108 Wn. App. 198, 207, 31 P.3d 1 (2001).

[34] See Clerk's Papers at 61-66.

[35] Id. at 63 (emphasis added).

15

In Huard's reply in support of its motion, it again focused on the Project Subcontract and on the language of Article XVI, the Disputes & Arbitration provision of the Master Agreement.[36] The only citation to Article XIX, the Indemnification provision, was in a footnote of this reply, which stated:

> Section XIV of the Master [Agreement] regarding Default by Huard, Section XV regarding Huard's Insurance obligations, *and Section XIX regarding Huard's Indemnity obligations*, all grant Prestige one-way attorney fee recovery rights. This underscores Prestige's intent that attorneys' fees be recoverable in <u>any</u> <u>dispute</u>.[37]

But this citation in the footnote does not properly preserve Huard's argument. First, this citation, in the reply brief, was too late to raise properly the argument before the trial court. Second, Huard did not make any argument. It neither provided the language of this provision, nor did it argue why this provision entitled Huard to fees. Third, Huard did not cite to this provision in the footnote to make an independent argument that it was entitled to fees under this section. Rather, it cited to this provision to support its argument that these provisions "underscore[] Prestige's intent that attorneys' fees be recoverable in any dispute."[38]

Huard argues that "RCW 4.84.330 was clearly raised below by Huard."[39] It points out that it cited to this statute in its motion for an award of fees and in its reply. But while Huard cited to this statute, it never did so in the context of the

---

[36] Id. at 160-65.

[37] Id. at 162 (first emphasis added).

[38] Id. (emphasis omitted).

[39] Reply Brief of Appellant at 1.

Indemnification Provision. Additionally, it never cited this statute for the proposition it now asserts, that "RCW 4.84.330 transforms Prestige's unilateral fee provision into a bilateral provision."[40] Rather, it cited to this statute in its original motion to support the proposition that "[u]nder RCW 4.84.330, such contractual attorneys' fee clauses are enforceable," and in its reply to support the proposition that "attorney fee rights in a contract cannot be waived."[41]

For these reasons, we decline to consider this argument any further.

## AWARD OF ATTORNEY FEES ON APPEAL

Huard finally argues that it is entitled to an award of attorney fees for this appeal, citing the principle that "'[a] contract providing for an award of attorney fees at trial also supports such an award on appeal.'"[42] Because the Master Agreement does not provide a basis for an award of attorney fees at trial in this case, we deny Huard's request for fees on appeal.

We affirm the decision of the trial court denying reasonable attorney fees and deny Huard's request for reasonable attorney fees on appeal.

_Cox, J._

WE CONCUR:

_Trickey, J_

_Schindler, J_

---

[40] Id.

[41] Clerk's Papers at 63, 161.

[42] Brief of Appellant at 35 (quoting Hall v. Feigenbaum, 178 Wn. App. 811, 827, 319 P.3d 61, review denied, 180 Wn.2d 1018 (2014)).